IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| HYUNDAI MOTOR AMERICA, INC., a California corporation, HYUNDAI MOTOR COMPANY, a Korean corporation<br><br>Plaintiffs,<br><br>v.<br><br>RYDELL CHEVROLET, INC., a Delaware corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 6:15-cv-02041 EJM (JSS)<br><br>DEFENDANT RYDELL CHEVROLET, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6) |

**TABLE OF CONTENTS**

I.      INTRODUCTION..................................................................................................2

II.     STANDARD OF REVIEW ...................................................................................3

III.    PLAINTIFFS' ALLEGATIONS AND RELEVANT
        FACTUAL BACKGROUND ................................................................................4

        A.      **Rydell Chevrolet**....................................................................................4

        B.      **Plaintiffs Concede That They Have No Evidence Of Counterfeit Parts**...........5

IV.     ARGUMENT..........................................................................................................6

        A.      **Plaintiffs' Grey Market Allegations are Deficient As A Matter of Law**...........6

        B.      **It Is Legal To Sell Materially Different Goods When The Difference
                Is Properly Disclosed** ..............................................................................7

V.      PLAINTIFFS' THIRD CAUSE OF ACTION FOR TRADEMARK DILUTION
        UNDER 15 U.S.C. § 1125(C) ALSO FAILS TO STATE A PLAUSIBLE
        DILUTION CLAIM AGAINST RYDELL.............................................................8

VI.     PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED UNDER
        28 U.S.C. § 1367(C)...............................................................................................9

VII.    CONCLUSION .....................................................................................................10

COMES NOW Defendant Rydell Chevrolet, Inc. ("Rydell") and submits the following Brief in Support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

This motion is before the court following Plaintiffs Hyundai Motor America, Inc. ("HMA") and Hyundai Motor Company ("HMC") decision to file an amended complaint in response to Rydell's initial motion to dismiss to address material issues in their pleadings. Rather than addressing these issues, however, Plaintiffs have simply rephrased their initial insufficient complaint. HMC is a Korean company that manufactures and sells motor vehicles and parts under the Hyundai trademark. First Amended Complaint (FAC) ¶ 8. HMA is a subsidiary of HMC with exclusive distribution rights to Hyundai brand automobile parts and accessories in the United States. FAC ¶ 7. HMA and HMC allege that Rydell has engaged in the importation, distribution and sale of illegal grey market Hyundai auto parts in the U.S. FAC ¶ 6. Each one of the seven causes of action of the FAC is premised on Rydell's alleged sale, importation and/or distribution of "illegal gray market" goods. A grey market good (also called a "parallel import") "is a foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." *K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176 (1988).

As in the initial complaint, Plaintiffs *still* cannot reasonably allege or establish that the accused goods are "grey market" imports *at all.* As set forth in the attached Declaration of Matt Halbur ("Halbur Dec."), the inventory of Hyundai parts acquired by Rydell was acquired *domestically* from a distributor in Michigan, who, on information and belief, obtained them from Hyundai's own parts factory in Alabama. (¶ 4). Even in the light most favorable to the Plaintiffs, these are not foreign or grey market goods at all. The entire pleading basis of Plaintiffs' FAC is false.

This blatant issue of fact with Plaintiffs' FAC renders their claims implausible. Each of the seven causes of action plaintiffs allege should be dismissed.

## II. STANDARD OF REVIEW

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown'—that the pleader is entitled to relief." *Id*. Moreover, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Sagez v. Global Agric. Invs., LLC,* No. 11-CV-3059, 2015 U.S.Dist.LEXIS 48747 at *8(N.D.Iowa Apr. 14, 2015).

A plaintiff must include sufficient "factual enhancement' in its complaint to cross "the line between possibility and plausibility." *Twombly*, *supra,* 550 U.S. at 557. "The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief,'" *Iqbal*, *supra,* 556 U.S. at 678. "'The factual specificity needed to satisfy this pleading requirement will vary depending on the context.'" *Eclectic Props. East v. Marcus & Millichap Co*., 751 F.3d 990, 997 (9th Cir. 2014) (internal citations omitted)*; see also, United States ex rel. v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 560-561 (8th Cir. Mo. 2006). In the context of commercial transactions, "[w]hen companies engage in transactions that are facially legitimate, pay rent and operate legitimate businesses for years thereafter, and otherwise act as routine participants in American commerce, *a significant level of factual specificity is required to*

*allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme.*" *Eclectic Props.*, *supra,* 751 F.3d at 997-998 (emphasis added).

In this case, it is important to emphasize the requirement for factual specificity because, under *Twombly/Iqbal*, it is *not* appropriate for a court to turn a frivolous claim into a substantial one by imagining facts that are not present in a complaint. Here, only imagination could turn Plaintiffs' non-actionable, vague, and trivial allegations into actionable sale of allegedly illegal grey market goods. "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (internal citations omitted). Yet that is precisely what Plaintiffs are attempting to do here. This Court should not permit Plaintiffs to maintain their claims in the absence of credible, supportable factual allegations, consistent with Fed.R.Civ.P. 11, that any of the products Rydell sold were indeed grey market goods.

### III. PLAINTIFFS' ALLEGATIONS AND RELEVANT FACTUAL BACKGROUND

#### A. Rydell Chevrolet

Each of Plaintiffs' seven causes of action stems from the same set of allegations, namely that Rydell imports, promotes, distributes and sells auto parts that constitute illegal gray market goods. FAC ¶¶ 54, 61, 67, 73. Specifically, Plaintiffs allege that Rydell has sold bumpers, grilles, chrome grilles, and fog lamp assemblies that bear the Hyundai mark, but that are materially different from genuine Hyundai parts earmarked for sale in the United States. FAC ¶ 35. These differences allegedly include, *inter alia*, different packaging and/or product weight, product label placement, product number marking, number of assembly pieces in a given part, part assembly and logo usage. FAC ¶ 36. Plaintiffs allege that Rydell's actions are likely to cause confusion and detract from Plaintiffs' ability to control the quality of their products. FAC ¶ 50.

The FAC also alleges that Rydell has knowingly flooded the market with substandard, defective and/or faulty Hyundai parts intended to confuse and mislead consumers to those consumers' physical detriment and risk. FAC ¶ 27. Plaintiffs have identified certain of these parts as having an inspection sticker on the part indicating that the part is "damaged and/or has been rejected for quality issues." FAC ¶ 35(c)(v) and (d)(iii). Certain of these parts are alleged to have been "repair[ed]" and are thus no longer "new." FAC ¶ 35(d)(v). These damaged, rejected and/or repaired parts purportedly have other differences (*i.e.,* differences in mounts and chrome covering). FAC ¶ 35(c)(v) and (d)(vi)-(ix). Moreover, Plaintiffs allege that Hyundai parts manufactured for use and sale in the United States are designed to meet applicable U.S. standards and regulations, and are covered by different warranties than those parts sold outside the United States. FAC ¶¶ 26-29.

Based on these allegations, the FAC asserts federal claims for trademark infringement, trademark dilution, and false designation of origin as well as corresponding state law and state common law claims, including a common law unfair competition claim.

        **B.**        **Plaintiffs Concede That They Have No Evidence Of Counterfeit Parts**

The FAC is telling in what it does not allege, namely, a cause of action for counterfeiting under the Lanham Act. Plaintiffs make unsubstantiated allegations that Rydell is a counterfeiter using a "counterfeit. . . of the registered HYUNDAI MARKS." See FAC ¶54. However, Plaintiffs explicitly admit in their FAC that they do *not* have, and have never had, any evidence that Rydell has dealt in counterfeit Hyundai brand auto parts: Plaintiffs also have reason to believe that some of the Rydell Products may be counterfeit. The determination of whether these parts are counterfeit or not depends on the source from which Rydell purchased those specific products. Only through the course of discovery can Hyundai determine if certain parts are counterfeit (as opposed to illegal gray-market) and if such a determination is made, Hyundai will

"see [sic] leave of court to amend its complaint to further allege the sale of counterfeit RYDELL [sic] Products by Defendants.[1]" FAC ¶ 40.

By their own admission, therefore, Plaintiffs are engaged in a "fishing expedition" to try to obtain evidence that they do not know exists. This entire FAC, therefore, violates Fed.R.Civ.P. 11 because Plaintiffs have no reasonable basis to believe it is true.

IV. ARGUMENT

    A. **Plaintiffs' Grey Market Allegations Are Deficient As A Matter Of Law**

Unlike a counterfeit good, a grey market good is not a forgery of a trademarked product or an imitation affixed with a sham mark. *K-Mart Corp.*, *supra*, 485 U.S. 176; *see also, McCarthy on Trademarks and Unfair Competition* § 25:10 (4th ed. 2010). Instead, it is a genuine good that has been affixed with a legal trademark by a foreign entity that holds a license or a right to mark that good within a different country. *K-Mart*, 485 U.S. at 954. Consistent with the "first sale[2]" doctrine, it is not a violation of trademark laws to import and sell genuine grey market goods as long as the goods are not "materially different" from the United States trademarked goods. *See Softman Products Co., LLC v. Adobe Systems, Inc.*, 171 F.Supp.2d 1075, 1092 (C.D.Cal. 2001); *Societe Des Produits Nestle, C.A. v. Casa Helvetia*, Inc., 982 F.2d 633, 638 (1st Cir. 1992).

Thus, courts have distinguished between the permissible sale of *legal* grey market goods which are not materially different from their domestic counterpart and do not violate the Lanham Act as opposed to the impermissible sale of *illegal* grey market goods which are materially

---

[1] This statement by Plaintiffs is telling. First, it constitutes an admission that Plaintiffs cannot detect a counterfeit part from a legitimate part merely by examining or testing it since Plaintiffs had an opportunity to do both in this case when it obtained parts from Rydell through Plaintiffs' Ontario, CA dealer Romero Hyundai. See Plaintiffs' Opposition to Defendant's Motion to Dismiss for Improper Venue ("Opposition Brief") Dkt No. 24 at, p. 5. Second, it appears to indicate that Plaintiffs do not maintain quality control and oversight over the "variety of authorized manufacturers and/or suppliers" that build Hyundai auto parts for use in the U.S. Why else would Plaintiffs need discovery to surmise the source of these goods in order to assess whether such goods are genuine?

[2] Under the "first sale" doctrine, "a markholder may no longer control branded goods after releasing them into the stream of commerce. After the first sale, the brandholder's control is deemed exhausted." *McCarthy on Trademark and Unfair Competition* § 25:41 (4th ed. 2010).

6
Case 6:15-cv-02041-EJM   Document 53-1   Filed 07/24/15   Page 6 of 11

different to their domestic counterpart and do violate the Lanham Act. *See e.g.*, *Weil Ceramics & Glass, Inc. v. Dash*, 878 F.2d 659 (3d Cir. 1989) ("Trademark law generally does not reach the sale of *genuine* goods bearing a true mark even though such sale is without the owner's consent") (citations omitted); *American Circuit Breaker Corp. v. Oregon Breakers, Inc.*, 406 F.3d 577 (9th Cir. 2005) ("Rather than being confused, [U.S.] customers who purchase the gray [Canadian market] circuit-breakers. . . get exactly what they expect.").

Therefore, to state a legally cognizable claim for relief under the Lanham Act "[a] plaintiff in a gray market trademark infringement case must establish that all or substantially all of its sales are accompanied by the asserted material difference in order to show that its goods are materially different." *SKF USA Inc. v. International Trade Com'n*, 423 F.3d 1307 (Fed. Cir. 2005), *cert. denied*, 126 S.Ct. 2968, (2006). "This is required in order to meet the prerequisite that goods of the accused importer are materially different from those of the trademark owner." 5 *McCarthy on Trademarks and Unfair Competition* § 29:51.75 (4th ed. 2010).

While Plaintiffs claim their amended complaint now identifies the "materially differences" between the accused parts and "genuine" Hyundai parts, Plaintiffs fail to claim in any plausible way that the goods are grey market goods at all. The FAC as a whole completely lacks the factual detail sufficient to support its conclusory allegations that Rydell imports, distributes, promotes and/or sells in the United States illegal grey market goods.

      **B.**    **It Is Legal To Sell Materially Different Goods When The Difference Is Properly Disclosed**

As a matter of law, and contrary to the allegations in the FAC, it is perfectly legal for a dealer to sell reconditioned goods of the type allegedly sold by Rydell if the dealer discloses the nature and quality of the goods to consumers. See, e.g., *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 129 (1947) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the [trademark] as to prevent its being used to tell the truth."); *Home Box*

*Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1315 (2d Cir. 1987) (disclaimers permitted to address the problem of trademark infringement when they "are sufficient to avoid substantially the risk of consumer confusion") (citations omitted); *Graham Webb Int'l Limited Partnership v. Emporium Drug Mart, Inc.*, 916 F.Supp. 909, 917 (E.D.Ark. 1995). Even materially different goods are legal to import and sell if the differences are properly disclaimed to consumers so that there is no consumer confusion. *Id.*

Here, as in *Champion Spark Plug*, supra, the accused goods have been properly marked to disclose to consumers the nature and quality of certain chrome grilles and fog lamp assemblies Rydell purportedly sold since these products, as alleged in Plaintiffs' FAC, contained a sticker which informed consumers that the goods were "damaged and/or rejected.[3]" Moreover, as further alleged in Plaintiffs' FAC, consumers were put on notice that "a repair was attempted on the. . . Rydell [sic] Product" and that the product "is no longer 'new.'" Thus, in this case, Plaintiffs' marks (i.e., HYUNDAI and/or the HYUNDAI design mark) were not being used by Rydell to deceive the public, but merely to inform the public of the nature and quality of these branded goods. "Inferiority is immaterial so long as the article is clearly and distinctly sold as repaired or reconditioned rather than as new." See *Champion Spark Plug*, 331 U.S. at 130.

Thus, the notice that Plaintiffs admit accompanied the accused goods is sufficient to obviate Rydell of any liability related to the sale of the repaired goods.

### V. PLAINTIFFS' THIRD CAUSE OF ACTION FOR TRADEMARK DILUTION UNDER 15 U.S.C. § 1125(C) ALSO FAILS TO STATE A PLAUSIBLE DILUTION CLAIM AGAINST RYDELL

For other independent reasons, Plaintiffs' Third Cause of Action should be dismissed. This claim is for federal trademark dilution. FAC ¶¶ 72-77. Tarnishment occurs where a mark is used in a disparaging context. *See, e.g., Clinique Labs., Inc. v. Dep. Corp.*, 945 F.Supp.

---

[3] There is no prohibition against the sale of "defective or scrap" products bearing a third party mark when the seller makes "explicit disclosure" stating the nature and quality of the product as Rydell has done in this case. See 3M v. Rauh Rubber, 943 F. Supp. 1117, 1134 (D. Minn. 1996). Thus, even if certain products were not repaired, Rydell can sell said products as "rejected" parts if it makes the appropriate disclosure. It is undisputed in this case that Rydell has made such a disclosure.

547, 562 (S.D.N.Y. 1996). In the Eighth Circuit, dilution by tarnishment occurs when a defendant uses the same or similar mark in a way that creates an undesirable, unwholesome, or unsavory mental association with the plaintiff's mark. *Anheuser-Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 777 (8th Cir. 1994).

Plaintiffs allege that Rydell tarnished their mark by using the HYUNDAI and/or the HYUNDAI design mark on genuine, but grey market, Hyundai brand auto parts. But by Plaintiffs' own admission, these *are* genuine Hyundai parts, merely destined (according to Plaintiffs) for foreign markets. Plaintiffs can hardly argue that their own parts, wherever they are headed, are so shoddy, unwholesome, or unsavory as to harm their own reputation. Apart from the fact that the notion is idiotic on its face, none of the alleged differences even remotely suggests such an outcome. Thus, Plaintiffs fail to allege a cause of action for federal trademark dilution.[4]

## VI. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED UNDER 28 U.S.C. § 1367(C)

Because Plaintiffs' Lanham Act claims must be dismissed, the Court may decline to exercise supplemental jurisdiction over Plaintiffs' state law and state common law claims, *i.e.,* their Fifth, Sixth, Seventh and Eighth Causes of Action, pursuant to 28 U.S.C. § 1367(c)**.** Once supplemental jurisdiction has been established under § 1367(a), a district court can decline to assert supplemental jurisdiction over a pendent claim if one of the four categories specifically enumerated in section 1367(c) applies. *Thelen v. Wakonda Club,* No. 4:04-cv-40035*,* 2004 U.S.Dist.LEXIS 14099 (S.D.Iowa July 23, 2004).

Section 1367(c) states that "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... if … (3) the district court dismissed all claims over which it has original jurisdiction.…" Here, the claims to which the court has original federal jurisdiction are

---

[4] The inferiority associated with a repaired or reconditioned good of the sort allegedly sold by Rydell does not inure to Plaintiffs since one would expect that an auto part that has been repaired or reconditioned does not measure up to the specifications of a new one. See *Champion Spark Plug*, 331 U.S. at 128-129.

those arising under the Lanham Act, namely, the First, Second, and Third Causes of Action. For the reasons stated above, each of Plaintiffs Lanham Act claims should be dismissed for failure to state a claim upon which relief may be granted. The reason being that the "material difference rule applies to all Lanham Act claims." *McCarthy on Trademarks and Unfair Competition* § 29:51.75. As the First Circuit remarked, "all roads lead to Rome" in the sense that under either Lanham Act §§32 [15 U.S.C. § 1114] or 42 [15 U.S.C. § 1124] or 43 [15 U.S.C. §1125], "liability necessarily turns on the existence *vel non* of material differences between the products of a sort likely to create consumer confusion." *Helvetia*, 982 F.2d at 640. Therefore, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' pendant state law claims as well. Moreover, in any event, the state law claims suffer from the same substantive defects as Plaintiffs' federal claims.

## VII. CONCLUSION

For the reasons set forth above, Rydell requests that this Court dismiss Plaintiffs' FAC in its entirety with prejudice.

| | |
|---|---|
| Dated: July 24, 2015 | */s/ Richard P. Sybert* <br> Richard P. Sybert, Esq. <br> *Pro Hac Vice* <br> GORDON & REES LLP <br> 101 West Broadway, Suite 1600 <br> San Diego, CA 92101 <br> Telephone: (619) 696-7000 <br> Facsimile: (619) 696-7124 <br> Email: rsybert@gordonrees.com <br><br> */s/ Justin H. Aida* <br> Justin H. Aida, Esq. <br> *Pro Hac Vice* <br> GORDON & REES LLP <br> 2211 Michelson Drive, Suite 400 <br> Irvine, CA 92612 <br> Telephone: (949) 255-6950 <br> Facsimile: (949) 474-2060 <br> Email: jaida@gordonrees.com <br><br> */s/ Stephen J. Holtman* <br> Stephen J. Holtman <br> Mark A. Roberts <br> Dawn M. Gibson <br> SIMMONS PERRINE MOYER BERGMAN PLC <br> 115 Third Street SE, Suite 1200 <br> Cedar Rapids, IA 52401 <br> Telephone: (319) 366-7641 <br> Facsimile: (319) 366-1917 <br> Email: mroberts@simmonsperrine.com <br><br> **Attorneys for Defendant** <br> **Rydell Chevrolet, Inc.** |

### CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2015 I filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all attorneys and parties of record.

/s/Stephen J. Holtman